J-A04038-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JEFFREY A. EDEN, | |
| Appellant | No. 1401 EDA 2015 |

Appeal from the Judgment of Sentence November 19, 2014
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0012587-2011
CP-51-CR-0012657-2011

BEFORE: SHOGAN, J., SOLANO, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED MAY 23, 2017**

Appellant, Jeffrey A. Eden, appeals from the judgment of sentence imposed on November 19, 2014, following his jury conviction, in two consolidated cases, of two counts of corrupting a minor, and one count each of unlawful contact with a minor, rape by forcible compulsion, involuntary deviate sexual intercourse (IDSI), statutory sexual assault, sexual assault, and indecent assault.[1] On appeal, Appellant challenges the sufficiency and weight of the evidence, both the legality and discretionary aspects of

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6301(a)(1), 6318(a)(1), 3121(a)(1), 3123(a)(1), 3122.1, 3124.1, and 3126(a)(1), respectively.

sentence, certain of the trial court's evidentiary rulings, and the jury charge. For the reasons discussed below, we affirm in part and vacate in part.

We take the underlying facts and procedural history in this matter from the trial court's November 2, 2015 opinion, and our independent review of the certified record.

> Sometime between 2009 and 2010, A.S. spent a night with [Appellant] and [Appellant's] son in a hotel room with two beds in Philadelphia. A.S. was between twelve and thirteen at that time and [Appellant] was his brother-in-law. That night, [Appellant] and A.S. shared a bed while [Appellant's] son slept in a separate bed in the room. During the night, A.S. awoke to [Appellant] ripping A.S.'s underwear and caressing A.S.'s penis. [Appellant] stopped touching A.S. once A.S. ejaculated. Although A.S. kept his eyes closed for the entire ordeal and pretended to be asleep, A.S. stated that he knew [Appellant] was the one touching him by the way [Appellant's] hands felt.
>
> On March 2, 2011, A.S. met with his principal, Maryland Perez, (herein "Perez"), at Madison High School in Philadelphia to discuss his absence from school due to a wrestling injury. During that meeting, A.S. told Perez that he was the victim of sexual abuse. As mandated by law, Perez alerted law enforcement to the allegations of sexual abuse against her student. Later that day, Officer [Oswaldo] Toribio and Officer Fuller[2] met with Perez who explained that her student A.S., made allegations of sexual abuse to her and that A.S. feared speaking to the police about the allegations. Officer Torib[i]o and Officer Fuller proceeded to A.S.'s residence in Philadelphia . . . to investigate the claims. After initially refusing to speak with the [o]fficers, A.S. later decided to meet with Officer Toribio alone. He told Officer Toribio that [Appellant] touched his penis while he was sleeping. Officer Toribio testified that A.S.'s eyes were watery and teary as he recounted the details of the incident. Officer Toribio completed a report for the special victim

_____

[2] Officer Fuller's first name is not contained within the record.

unit and a police incident report detailing the allegations then transported A.S. to the special victims unit.

On November 6, 2011, A.S. reported that [Appellant] sexually abused him a second time, one to two years after the initial incident, at [Appellant's] house located at 5010 Bingham St. in Philadelphia. A.S. testified that he slept at [Appellant's] house but was awakened by [Appellant] ripping A.S.'s boxers and touching A.S.'s penis until A.S. ejaculated. A.S. kept his eyes closed and pretended that nothing happened again.

A.S. later reported to [] Family Court Assistant District Attorney [Connor Shields] about a third incident of sexual abuse by [Appellant], which occurred at an unspecified date and time, also at [Appellant's] house at 5010 Bingham Street, Philadelphia. A.S. stated that he was awaken[ed] when he felt [Appellant] performing oral sex on him until A.S. ejaculated. Again, A.S. pretended as if nothing happened. He testified that he felt ashamed of the incidents and reluctantly told authorities about only one incident of sexual abuse at first before he realized that it was better to get it all out in the open.

On June 2, 2011, A.S.'s sister, M.O., told A.S. and then reported to authorities that she too was a victim of sexual abuse by [Appellant]. M.O. told authorities that when she was around eleven years old, approximately between 1996 and 1997, [Appellant] played hide and seek in the dark at her mother's house with her and other children. [Appellant] often found M.O. by feeling her body in the dark. M.O. related that although [Appellant] would begin touching her in different places each time, [Appellant] always made sure he touched certain places on her body. He would keep touching her even after she told Defendant, "you got me." M.O. also testified that when she wore shorts and no shirt in the house, around age eleven, [Appellant] once told her, "[l]ook at you all sexy with your mosquito bites," in reference to M.O.'s breasts. M.O. also reported of another incident during the same timeframe where she woke up during movie night with her underwear removed and her private area wet. When M.O. smelled her underwear she knew that it was not urine and was something else. She further testified that when she was at her mother's house, [Appellant] propositioned her to have sexual intercourse with him in exchange for $50[.00] and then $75[.00], which M.O. twice refused. On August 12, 2011, police served an arrest

warrant on [Appellant] at his home at 5010 Bingham Street[,] Philadelphia, PA, and placed him under arrest.

(Trial Court Opinion, 11/02/15, at 2-5) (record citations omitted).

A jury trial took place in June 2014. On June 25, 2014, the jury convicted Appellant of two counts of corrupting a minor, and one count each of unlawful contact with a minor, rape by forcible compulsion, IDSI, statutory sexual assault, sexual assault, and indecent assault, but acquitted him of one count each of criminal solicitation to commit rape by forcible compulsion and criminal solicitation to commit statutory sexual assault.

On November 19, 2014, the trial court sentenced Appellant to an aggregate term of incarceration of not less than fifteen nor more than thirty years. On December 1, 2014, Appellant filed post-sentence motions,[3] which were denied by operation of law on April 13, 2015. This instant, timely appeal followed. On May 8, 2015, the trial court directed Appellant to file a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). Appellant filed timely Rule 1925(b) statements on May 21, 2015. *See id.* On November 2, 2015, the trial court issued an opinion. *See* Pa.R.A.P. 1925(a).

_____

[3] For reasons not readily apparent from the record, although the trial court consolidated the two cases under one case number, CP-51-CR-0012387-2011, Appellant filed separate post-sentence motions and Rule 1925(b) statements concerning each victim. Thus, the motions and Rule 1925(b) statements are not identical. Therefore, we will reference them by using the initials of the victim.

On appeal, Appellant raises the following questions for our review:[4]

1.    [Did] [t]he trial court err[] in [failing to] dismiss[] the action(s) against [Appellant], as no Bills of Information were ever filed by the Commonwealth of Pennsylvania identifying the charges against [Appellant] and what charges the Commonwealth was proceeding under in these case(s) and as required by Pa.R.Crim.P. 560(A) and resulting in prejudice to [Appellant?]

2.    [Did] [t]he trial court err[] in allow[ing] an assistant district attorney, Connor Shields[,] to testify at trial regarding conversations which had taken place with the [c]omplainant, A.S.[,] over [three] years prior to the trial, in the Commonwealth's case in chief as any statement given by the [c]omplainant was hearsay and not proper on direct examination and was irrelevant[?]

3.    [Was] [t]he evidence [] insufficient as a matter of law against [Appellant] to find him guilty of [i]Indecent [a]ssault as to M.O. pursuant to 18 Pa.C.S.A. § 3126(a)(1) as there was no evidence of touching with the intent to cause sexual arousal and/or gratification[?]

4.    [Was] [t]he evidence [] insufficient as a matter [of law] against [Appellant] to find him guilty of corruption of the morals of a minor as to M.O., pursuant to 18 Pa.C.S.A. [§] 6301(a)(1), as there was no evidence that he tended to corrupt the morals of M.O. by playing games with her[?]

5.    [Was] [t]he evidence [] insufficient as a matter law to find [Appellant] guilty of rape by [f]orcible [c]ompulsion pursuant to 18 Pa.C.S.A. [§] 3121(a)(1) as there was no evidence of forcible compulsion presented at trial[?]

6.    [Was] [t]he jury verdict of guilty on the charges of corruption of the morals of a minor pursuant to 18 Pa.C.S.A. [§] 6301(a)(1) and [i]ndecent [a]ssault pursuant to 18 Pa.C.S.A. § 3126(a)(1) []  against the weight of the evidence presented at trial as M.O. did not reveal these

---

[4] For ease of disposition, we have reordered the issues in Appellant's appeal.

allegations for approximately [fifteen] years, there was no evidence of the charges other than the complainant's testimony and [Appellant] had presented character evidence[?]

7. [Was] [t]he jury's finding of guilty on the charges of unlawful contact with a minor, corruption of the morals of a minor, rape, involuntary deviate sexual intercourse, statutory sexual assault and sexual assault [] against the great weight of the evidence presented at trial as A.S. gave conflicting testimony to the police and district attorney's office and [Appellant] had character evidence and there were no documents to support A.S.'s claims[?]

8. [Did t]he trial court err[] in failing to properly read the jury charge for corruption of the morals of a minor by reading all three [] sections of the charge rather than the two [] sections which were applicable to the case against [Appellant] resulting in prejudice to [Appellant?]

9. [Did] [t]he trial court err[] in failing to instruct the jury, during the trial court's charge to the jury on the definition of "reasonable doubt" and how that reasonable doubt impacts the burden of proof as required by Pa.SSJI 7.01 in [its] charge to the jury in violation of the 14th Amendment to the United States Constitution and Pennsylvania Constitution, Article I, Section 9, which resulted in prejudice to [Appellant?]

10. [Did] [t]he trial court fail[] to instruct the jury on the issue of prior inconsistent statements [Pa.]SSJI 4.08A(1)(2) (second alternative), as requested by [Appellant's] counsel in the charging conference and despite being objected to by [Appellant] and the trial court did not define to whom the "witness" was either A.S. or M.O[?]

11. [Did] [t]he trial court improperly instruct[] the jury on the charge of involuntary deviate sexual intercourse under 18 Pa.C.S.A. § 3123(a)(7) ([less than] 16 years of age and [greater than] 4 years older than the other person), when the Commonwealth was proceeding under 18 Pa.C.S.A. § 3123(a)(1) (forcible compulsion) and which was not reflected on the verdict sheet prepared by the Commonwealth resulting in the jury being able to

determine the elements of the offense necessary to convict under section [] 3123[?]

12.    [Did] [t]he trial court fail[] to address whether the Commonwealth of Pennsylvania and/or [Appellant] had any objections to the jury charge following the reading of the jury charge and prior to sending the jury out to deliberate[?]

13.    [Did] [t]he trial court err[] in permitting the jury, during its deliberations, to review the Pennsylvania Crimes Code, *i.e.*, Title 18, rather than the standard jury charge(s) which the jury had requested which resulted in prejudice to [Appellant]?

14.    [Did] [t]he trial court abuse[] its discretion in sentencing [Appellant] outside the Pennsylvania Sentencing guidelines and giving him the maxim[um] sentence(s) on all charges and fail[] to articulate the reason for the sentencing outside of the guidelines and to the statutory maximums which was excessive and there was no rational basis for the sentences as well as being unreasonable[?]

15.    [Did the] trial court err[] in sentencing [Appellant] on the charge of "involuntary deviate sexual intercourse" to the mandatory minimum sentence of [not less than] ten [nor more than] twenty [] years when the mandatory sentencing scheme, under 42 Pa.C.S.A. § 9718[,] was outlawed by the decision of the United States Supreme Court in ***Alleyne v. United States***, 1[3]3 S.Ct. 2151 (2013) and ***Commonwealth v. Wolfe***, [] 106 A.3d 800 ([Pa. Super.] 2014)[,] and proper notice was never served upon [Appellant] of the Commonwealth's intent to proceed via the mandatory minimum[?]

(Appellant's Brief, at 9-12).

Initially, we mention the following concerns. While this Court understands the duty to be a zealous advocate,

> . . . we note that it has been held that when an appellant raises an extraordinary number of issues on appeal, as in this case, a presumption arises that there is no merit to them. In

*United States v. Hart*, 693 F.2d 286, 287 n.1 (3rd Cir. 1982), the court had an opportunity to address this situation:

> Because of the inordinate number of meritless objections pressed on appeal, spotting the one *bona fide* issue was like finding a needle in a haystack. One of our colleagues has recently cautioned on the danger of "loquaciousness:"

> > With a decade and a half of federal appellate court experience behind me, I can say that even when we reverse a trial court it is rare that a brief successfully demonstrates that the trial court committed more than one or two reversible errors. I have said in open court that when I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to any of them. I do not say that this is an irrebuttable presumption, but it is a presumption nevertheless that reduces the effectiveness of appellate advocacy. Appellate advocacy is measured by effectiveness, not loquaciousness.

> Aldisert, The Appellate Bar: Professional Competence and Professional Responsibility—A View From the Jaundiced Eye of One Appellate Judge, 11 Cap.U.L.Rev. 445, 458 (1982).

*Estate of Lakatosh*, 656 A.2d 1378, 1380 n.1 (Pa. Super. 1995).

Further, we note it is well-settled that:

> [i]f an appellant has properly preserved an issue for appellate review, the appellant must include in his or her brief a "statement of the case" including a "statement of place of raising or preservation of issues." Pa.R.A.P. 2117(c). This information must also be referenced in the argument portion of the appellate brief. [*See*] Pa.R.A.P. 2119(e).

*Commonwealth v. Baker*, 963 A.2d 495, 502 n.5 (Pa. Super. 2008), *appeal denied*, 992 A.2d 885 (Pa. 2010). In addition, "it is not the responsibility of this Court to scour the record to prove that an appellant has raised an issue before the trial court, thereby preserving it for appellate review." *Id.* at 502 n.6 (citations omitted).

In this case, neither Appellant's statement of the case nor the argument section of his brief contains a specific "statement of place of raising or preservation of [his] issues" and it is not this Court's responsibility to scour the certified record, including the lengthy trial transcript, to prove that Appellant preserved them. Pa.R.A.P. 2117(c); *see Baker*, *supra* at 502 n.5, n.6; (Appellant's Brief, at 13-16, 18-50). Accordingly, Appellant's first, and eighth through twelfth issues, are waived on this basis. *See Baker*, *supra* at 502 n.5, n.6. Nonetheless, we will review them to the extent it is possible to do so.

In his first issue, Appellant argues that the trial court erred in not dismissing the action because the Commonwealth did not file bills of information as required by Pa.R.Crim.P. 560(a).[5] (*See* Appellant's Brief, at 18-19). Appellant has waived this claim.

_____

[5] Rule 560(A) provides: "[a]fter the defendant has been held for court following a preliminary hearing or an indictment, the attorney for the Commonwealth shall proceed by preparing an information and filing it with the court of common pleas." Pa.R.Crim.P. 560(A).

It is settled a criminal defendant must challenge defects in the charging process by filing an omnibus pre-trial motion. **See Commonwealth v. Martin**, 694 A.2d 343, 344 (Pa. Super. 1997). Failure to do so results in waiver on the issue on appeal. **See id.**; **see also Commonwealth v. Richter**, 676 A.2d 1232, 1236 n.2 (Pa. Super. 1996), *affirmed*, 711 A.2d 464 (Pa. 1998).

Here, as the trial court discusses in its opinion, Appellant did not file an omnibus pre-trial motion; instead, Appellant raised the issue for the first time in his post-sentence motions, something Appellant tacitly acknowledges in his brief. (**See** Trial Ct. Op., at 5-6; **see also** Appellant's Post-Sentence Motion as to Complainant A.S., 12/01/14, at 5-6; Appellant's Post-Sentence Motion as to Complainant M.O., 12/01/14, at 4-6; Appellant's Brief, at 19 n.5). Thus, we find that because Appellant did not file an omnibus pre-trial motion, he waived this claim. Therefore, the trial court did not err in not dismissing the action on this basis. **See Martin**, **supra** at 344; **Richter**, **supra** at 1236 n.2.

In his second issue, Appellant contends that the trial court erred in admitting the testimony of Assistant District Attorney Connor Shields at trial concerning A.S.'s prior consistent statements. (**See** Appellant's Brief, at 27-29). Specifically, Appellant claims the statements were hearsay, inadmissible during the Commonwealth's case in chief, and irrelevant. (**See id.** at 28-29). However, Appellant waived this claim.

This Court has held that:

> With regard to evidentiary challenges, it is well established that [t]he admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Furthermore, if in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

**Commonwealth v. Serrano**, 61 A.3d 279, 290 (Pa. Super. 2013) (citation and quotation marks omitted).

Here, Appellant claims that the trial court improperly admitted Assistant District Attorney Shield's testimony because it was hearsay, irrelevant, and not admissible during the Commonwealth's case-in-chief. (**See** Appellant's Brief, at 28-29). However, this Court has stated that, "[w]here a specific objection is interposed, other possible grounds for the objection are waived." **Commonwealth v. Shank**, 883 A.2d 658, 672 (Pa. Super. 2005), *appeal denied*, 903 A.2d 538 (Pa. 2006) (citations omitted). Because Appellant did not object to Assistant District Attorney Shield's testimony on the grounds of hearsay, irrelevancy, or inadmissibility during the Commonwealth's case-in-chief, he has waived this claim. **See Shank**, **supra** at 672.

In his third through fifth issues, Appellant challenges the sufficiency of the evidence. Specifically he claims that the evidence was insufficient to

sustain his conviction for: (1) indecent assault with respect to victim M.O. (**see** Appellant's Brief, at 32); (2) corruption of minors with respect to victim M.O. (**see id.** at 33); and (3) rape by forcible compulsion as to victim A.S. (**see id.** at 33-34). We disagree.

Our standard of review for sufficiency of the evidence claims is well settled:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, **when viewed in a light most favorable to the Commonwealth as verdict winner**, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
>
> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

**Commonwealth v. Tarrach**, 42 A.3d 342, 345 (Pa. Super. 2012) (citation omitted) (emphasis added).

Initially, we note that Appellant's argument is undeveloped. His argument for each of the three issues consists of less than one page. Further, Appellant's argument disregards our standard of review, which requires that we view the evidence in a light most favorable to the Commonwealth as verdict winner, because Appellant only discusses the

evidence in the light most favorable to him and ignores all other evidence. (*See* Appellant's Brief, at 32-34). Appellant overlooks the fact that this Court does not re-weigh the evidence, nor do we engage in credibility determinations. (*See id.*). Moreover, Appellant fails to cite to any relevant legal authority in support of his propositions. (*See id.*). Accordingly, Appellant has waived his sufficiency of the evidence claims. *See Commonwealth v. Liston*, 941 A.2d 1279, 1285 (Pa. Super. 2008) (*en banc*), *affirmed in part and vacated in part*, 977 A.2d 1089 (Pa. 2009); Pa.R.A.P. 2101. In any event, his claims lack merit.

Specifically, in his third issue, Appellant challenges the sufficiency of the evidence to support his conviction for indecent assault under 18 Pa.C.S.A. § 3126, which provides, in relevant part, as follows:

> **(a) Offense defined.**—A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:
>
> > (1) The person does so without the complainant's consent[.]

18 Pa.C.S.A. § 3126(a)(1). "Indecent Contact" is defined by section 3101 of the Crimes Code as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in either person." 18 Pa.C.S.A. § 3101.

- 13 -

In this case, viewing the evidence in the light most favorable to the Commonwealth, *see Tarrach*, *supra* at 345, M.O. testified that during movie nights with Appellant,[6] the then eleven-year-old would fall asleep watching the movie and wake up to find her panties pulled down or off and her vaginal area wet with a sticky fluid that did not smell like urine. (*See* N.T. Trial, 6/24/14, at 10-12, 30-31). She further stated that what woke her was someone touching or "sticking" her. (*Id.* at 12; *see id.* at 10-12, 30-31).

We have stated that, "the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses." *Commonwealth v. Castelhun*, 889 A.2d 1228, 1232 (Pa. Super. 2005) (citations omitted). Further, the testimony discussed above is sufficient to sustain a conviction for indecent assault. *See Commonwealth v. Smith*, 863 A.2d 1172, 1177 (Pa. Super. 2004) (holding touching of breast and vagina sufficient to establish indecent contact for purpose of arousing or gratifying sexual desire); *Commonwealth v. Vosburg*, 574 A.2d 679, 682 (Pa. Super. 1990), *appeal denied*, 602 A.2d 859 (Pa. 1991) (holding minor victim's testimony that she felt someone pulling down her underwear while she was in bed sufficient to prove indecent assault). Thus, Appellant's third claim would be meritless.

---

[6] While Appellant denied any sexual contact, he did admit to having movie nights with M.O. (*See* N.T. Trial, 6/24/14, at 115).

In addition, in his fourth issue, Appellant challenges his conviction for corrupting the morals of a minor with respect to M.O. An individual commits this crime when:

> . . . Except as provided in subparagraph (ii), whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree.

18 Pa.C.S.A. § 6301(a)(1)(i).

This Court has explained that:

> The statute requires that the knowing, intentional acts of the perpetrator *tend* to have the effect of corrupting the morals of a minor.

> This court has visited the question of what constitutes "corruption" of a minor's morals before. In **Commonwealth v. Decker**, 698 A.2d 99, 101 (Pa. Super. 1997)[, *appeal denied*, 705 A.2d 1304 (Pa. 1998)], we held that actions that tended to corrupt the morals of a minor were those that "would offend the common sense of the community and the sense of decency, propriety and morality which most people entertain."

**Commonwealth v. DeWalt**, 752 A.2d 915, 918 (Pa. Super. 2000) (emphasis in original, one citation omitted). Further, this Court has also stated:

> [C]orruption of a minor can involve conduct towards a child in an unlimited number of ways. The purpose of such statutes is basically protective in nature. These statutes are designed to cover a broad range of conduct in order to safeguard the welfare and security of our children. Because of the diverse types of conduct that must be proscribed, such statutes must be drawn broadly. It would be impossible to enumerate every particular act against which our children need to be protected.

*Commonwealth v. Barnette*, 760 A.2d 1166, 1173 (Pa. Super. 2000), *appeal denied*, 781 A.2d 138 (Pa. 2001) (citation omitted).

Here, in addition to the above described testimony of what occurred during movie nights, M.O. testified that, when she was age eleven or twelve, Appellant commented about the sexiness of her breasts, would play hide and seek and find Appellant by fondling her body, and offered her money to engage in sexual intercourse with him. (*See* N.T. Trial, 6/24/14, at 9-16, 27-31). This Court utterly rejects Appellant's unsupported contention that this evidence is insufficient to sustain a conviction for corrupting the morals of a minor. (*See* Appellant's Brief, at 33). We have long held that engaging in a pattern of sexual conduct with the minor victim is sufficient to sustain a conviction for corrupting the morals of a minor. *See Commonwealth v. Kelly*, 102 A.3d 1025, 1032 (Pa. Super. 2014) (*en banc*) (single instance of grabbing minor victim's genitals sufficient to sustain conviction for corrupting morals of minor); *Commonwealth v. Judd*, 897 A.2d 1224, 1234 (Pa. Super. 2006), *appeal denied*, 912 A.2d 1291 (Pa. 2006) (holding that engaging in various sexual offenses against victim sufficient to sustain conviction for corrupting morals of minor). Appellant's fourth claim lacks merit.

In his fifth issue, Appellant challenges his conviction for rape by forcible compulsion. An individual commits the crime of rape by forcible compulsion when he: "engages in sexual intercourse with a complainant:

(1) (b)y forcible compulsion[; or b]y threat of forcible compulsion that would prevent resistance by a person of reasonable resolution. 18 Pa.C.S.A. § 3121(a)(1)-(2). The Crimes Code defines "forcible compulsion" in relevant part as "compulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied. . . ." 18 Pa.C.S.A. § 3101. Our Supreme Court has stated that forcible compulsion "includes not only physical force or violence but also moral, psychological or intellectual force used to compel a person to engage in sexual intercourse against that person's will." *Commonwealth v. Rhodes*, 510 A.2d 1217, 1226 (Pa. 1986). The Court went on to state:

> The determination of whether there is sufficient evidence to demonstrate beyond a reasonable doubt that an accused engaged in sexual intercourse by forcible compulsion (which we have defined to include not only physical force or violence, but also moral, psychological or intellectual force used to compel a person to engage in sexual intercourse against that person's will), or by the threat of such forcible compulsion that would prevent resistance by a person of reasonable resolution is, of course, a determination that will be made in each case based upon the totality of the circumstances that have been presented to the fact finder. Significant factors to be weighed in that determination would include the respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial control over the victim, and whether the victim was under duress. This list of possible factors is by no means exclusive.

> \* \* \*

> There is an element of forcible compulsion, or the threat of forcible compulsion that would prevent resistance by a person of

reasonable resolution, inherent in the situation in which an adult who is with a child who is younger, smaller, less psychologically and emotionally mature, and less sophisticated than the adult, instructs the child to submit to the performance of sexual acts. This is especially so where the child knows and trusts the adult. In such cases, forcible compulsion or the threat of forcible compulsion derives from the respective capacities of the child and the adult sufficient to induce the child to submit to the wishes of the adult (prevent resistance), without the use of physical force or violence or the explicit threat of physical force or violence.

*Id.* at 1226-27 (citation and quotation marks omitted).

Here, the evidence showed that Appellant was the victim's brother-in-law; he acted as a father-figure to the victim after the victim's own father died. (*See* N.T. Trial, 6/23/14, at 47-48, 65). The victim was between age twelve and thirteen at the time of the incident. (*See id.* at 48). The victim testified that he was sleeping over at Appellant's home and awoke in the middle of the night to Appellant engaging in oral sex with him. (*See id.* at 53-54).

In the instant matter, given that the incident took place at Appellant's home, the age difference between Appellant and the victim, and Appellant's role as the victim's brother-in-law and surrogate father, we find that the evidence was sufficient to sustain a conviction for rape by forcible compulsion. *See Rhodes*, *supra* at 1227-28 (finding evidence sufficient to sustain conviction for rape by forcible instruction where defendant instructed child victim to lay down before engaging in intercourse); *see also Commonwealth v. Fears*, 836 A.2d 52, 66-67 (Pa. 2003), *cert. denied*,

545 U.S. 1141 (2005) (holding evidence sufficient to sustain conviction for rape by forcible compulsion where defendant pulled down twelve-year-old boy's pants and had oral sex with him). Appellant's fifth claim is meritless.

In Appellant's sixth and seventh claims he argues that his convictions for corrupting the morals of a minor and indecent assault as to victim M.O. and unlawful contact with a minor, corrupting the morals of a minor, rape, IDSI, statutory sexual assault, and sexual assault as to victim A.S. were against the weight of the evidence. (**See** Appellant's Brief, at 35-37). Specifically, Appellant claims that the finder-of-fact should not have credited the victims' testimony, there was no physical or documentary evidence, and Appellant presented character witnesses. (**See id.**). We disagree.

Our scope and standard of review of a weight of the evidence claim is as follows:

> The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.
>
> As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.
>
> Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the

underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Boyd*, 73 A.3d 1269, 1274-75 (Pa. Super. 2013) (*en banc*) (citation and quotation marks omitted). "Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Diggs*, 949 A.2d 873, 879-80 (Pa. 2008), *cert. denied*, 556 U.S. 1106 (2009) (citation omitted).

Here, the trial court rejected Appellant's weight of the evidence claim; noting that the jury credited the victims' testimony and the guilty verdict did not shock its conscience. (*See* Trial Ct. Op., at 11-12). We agree. Fact-finding and credibility determinations are matters for the jury. The record reflects that the jury chose to credit the testimony of the Commonwealth's witnesses and chose to reject the defense witnesses. The jury, sitting as finder of fact, was free to believe the Commonwealth's witnesses and to disbelieve the defense. *See Commonwealth v. Griscavage*, 517 A.2d 1256, 1259 (Pa. 1986). Thus, Appellant's weight of the evidence claims are without merit.

Appellant's eighth through eleventh claims all concerned alleged errors in the trial court's charge to the jury. (*See* Appellant's Brief, at 20-24, 29-30, 37-42). The standard governing our review of a challenge to jury instructions is as follows:

When reviewing a challenge to part of a jury instruction, we must review the jury charge as a whole to determine if it is fair and complete. A trial court has wide discretion in phrasing its jury instructions, and can choose its own words as long as the law is clearly, adequately, and accurately presented to the jury for its consideration. The trial court commits an abuse of discretion only when there is an inaccurate statement of the law.

*Commonwealth v. Jones*, 954 A.2d 1194, 1198 (Pa. Super. 2008), *appeal denied*, 962 A.2d 1196 (Pa. 2008) (citation omitted).

In his eighth claim,[7] Appellant contends that the trial court erred in "failing to properly read the jury charge for corruption of the morals of a minor by reading all three [] sections of the charge rather than the two [] applicable to the case. . . ." (Appellant's Brief, at 39). Appellant waived this claim.

The trial court charged the jury as follows:

[Appellant] has been charged with corruption of a minor. To find [Appellant] guilty of this offense, you must find that each of the following three elements has been proven beyond a reasonable doubt.

First, that [Appellant] was [eighteen] years of age or older at the time of the incident.

Second, that the complainant[s A.S. and M.O.] were under the age of [eighteen].

---

[7] Presumably, in an attempt to show prejudice, Appellant includes in his argument with respect to this issue a myriad of other complaints about the jury charge. (*See* Appellant's Brief, at 41-42). However, Appellant waived these claims because they are not included in his statement of the questions involved. *See Commonwealth v. Harris*, 979 A.2d 387, 397 (Pa. Super. 2009) (holding claim waived when not included in statement of questions involved).

Third that [Appellant] aided, abetted, enticed, or encouraged the minor to commit the [sic] crime or knowingly assisted or encouraged the minor to commit the [sic] crime or corrupted or tended to corrupt the morals of the minor following the alleged conduct.

(N.T. Trial, 6/25/14, at 24).

Here, Appellant did not take any exception and did not object to the instruction on corrupting the morals of a minor. (*See id.* at 32-33). Thus, the claim is waived. *See* Pa.R.Crim.P. 647(B); *Commonwealth v. Laird*, 988 A.2d 618, 646 (Pa. 2008), *cert. denied*, 562 U.S. 1069 (2010); *Commonwealth v. Parker*, 104 A.3d 17, 30 (Pa. Super. 2014), *appeal denied*, 117 A.3d 296 (Pa 2015). Appellant waived his eighth claim.

In his ninth claim, Appellant contends that the trial court erred in failing to read the definition of reasonable doubt to the jury. (*See* Appellant's Brief, at 20-24). Again, Appellant failed to take an exception or to object to the omission from the charge.[8] Therefore, Appellant waived his ninth claim. *See Laird*, *supra* at 646; *Parker*, *supra* at 30.

---

[8] In his brief, Appellant concedes that trial counsel did not object to the omission. (*See* Appellant's Brief, at 22 n.8). Appellant asks that we find trial counsel ineffective for failing to make the objection. (*See id.*). We remind counsel that with two limited exceptions, ineffective assistance of counsel claims are deferred for review pursuant to the Post-Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546. *See Commonwealth v. Holmes*, 79 A.3d 562, 563 (Pa. 2013). Ineffective assistance of counsel claims are allowed on direct appeal only where there are: (1) "extraordinary circumstances" such that "a discrete claim (or claims) of trial counsel's ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration

*(Footnote Continued Next Page)*

In his tenth claim, Appellant claims that the trial court failed to give the requested jury instruction on prior inconsistent statements. (**See** Appellant's Brief, at 29-30). Appellant does not claim that the charge was erroneous, but simply that it was not the requested charge. (**See id.**). While Appellant did object to the charge as given on this basis, (**see** N.T. Trial, 6/25/14, at 32), he has not demonstrated that he ever requested an alternate charge. In response to Appellant's objection, the trial court stated that it did not recall him ever requesting that charge and reminded him that it had asked for requested charges in advance. (**See id.** at 32-33). This Court has thoroughly examined the record, and can find nothing to support Appellant's claim that he ever requested an alternate charge on prior inconsistent statements.

We observe that "[i]t is an appellant's duty to ensure that the certified record is complete for purposes of review." **Commonwealth v. Reed**, 971 A.2d 1216, 1219 (Pa. 2009) (citation omitted). "[A]n appellate court cannot

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯

best serves the interests of justice," or (2) good cause and "the unitary review . . . is preceded by the defendant's knowing and express waiver of his entitlement to seek PCRA review from his conviction and sentence, including an express recognition that the waiver subjects further collateral review to the time and serial petition restrictions of the PCRA." **Id.** at 563-64. Here, because Appellant's ineffective assistance claim does not fall into either exception discussed above, we dismiss his claims without prejudice to raising them in a timely filed PCRA petition. **See Commonwealth v. Stollar**, 84 A.3d 635, 652 (Pa. 2014), *cert. denied*, 134 S.Ct. 1798 (2014) (dismissing, pursuant to **Holmes**, appellant's ineffective assistance of counsel claims raised on direct appeal, without prejudice to pursue them on collateral review).

consider anything which is not part of the record in the case. . . . because for purposes of appellate review, what is not of record does not exist." *Commonwealth v. Johnson*, 33 A.3d 122, 126 n.6 (Pa. Super. 2011), *appeal denied*, 47 A.3d 845 (Pa. 2012) (citations and internal quotation marks omitted).

While Appellant claims that he raised this request during a charge conference, there is no transcript of such and no reference to it in the certified record. (*See* Appellant's Brief, at 29-30). Again, we note "our review is limited to those facts which are contained in the certified record[,]" and what is not contained in the certified record "does not exist for purposes of our review." *Commonwealth v. O'Black*, 897 A.2d 1234, 1240 (Pa. Super. 2006) (citations omitted). Here, because all discussions regarding any proposed jury charge are *dehors* the record, we conclude Appellant waived his tenth claim.[9] *See O'Black*, *supra* at 1240; *see also Reed*, *supra* at 1219 (finding waiver and declining to review appellant's issue with an incomplete record); *Johnson*, *supra* at 126 (declining to reach merits of appellant's issue where it was deemed waived.).

---

[9] We note that, "[w]here portions of a proceeding are unrecorded, appellant's burden to supply a record may be satisfied through the statement in absence of transcript procedures." *Commonwealth v. Rovinski*, 704 A.2d 1068, 1073 (Pa. Super. 1997), *appeal denied*, 723 A.2d 1024 (Pa. 1998) (citing Pa.R.A.P. 1923). The record reflects that Appellant made no attempt to comply with the requirements of Rule 1923.

In his eleventh issue, Appellant claims that the trial court failed to properly instruct the jury on the charge of involuntary deviate sexual intercourse. (*See* Appellant's Brief, at 37-39). Specifically, Appellant claims that the trial court instructed the jury under the incorrect section of the statute, 18 Pa.C.S.A. § 3123(a)(7), which is age-based IDSI, rather than the section under which Appellant was charged, 18 Pa.C.S.A. § 3123(a)(1), which is rape by forcible compulsion. (*See id.*). However, Appellant waived this claim because not only did he not object to the charge as given but agreed to the Commonwealth's request to alter the verdict sheet to remove the forcible compulsion section and only have the jury deliberate on age-based IDSI. (*See* N.T. Trial, 6/25/14, at 33-34). Thus, Appellant waived his eleventh claim. *See Laird*, *supra* at 646; *Parker*, *supra* at 30.

In his twelfth issue, Appellant argues that the trial court erred by failing to ask the parties if they had any objections to the jury charge. (*See* Appellant's Brief, at 31). Initially, we note that Appellant has provided no legal support for his contention that a trial court is required to ask the parties if they have any objection to the jury charge. Moreover, the record reflects that, immediately following the conclusion of the charge, defense counsel *sua sponte* objected to the portion of the charge on prior inconsistent statements. (*See* N.T. Trial, 6/25/14, at 32-33). The trial court then asked if there were any other objections; in response, the Commonwealth noted an omission to the verdict sheet, the trial court asked

the Commonwealth to fix it, and defense counsel again noted an objection (the basis of this objection is not readily apparent from the record).  (*See id.* at 33).  Thus, it is evident from the record that defense counsel was aware that he could object to the jury charge and did object to those portions he found objectionable.  Appellant's twelfth claim lacks merit.

In his thirteenth issue, Appellant argues that the trial court erred in allowing the jury to review selected portions of the Pennsylvania Crimes Code during its deliberation.  (*See* Appellant's Brief, at 25-26).  Again, Appellant has waived this claim.

The issue of what materials are permitted to go back with the jury is governed by Pennsylvania Rule of Criminal Procedure 646, which provides in pertinent part:

> (A) Upon retiring, the jury may take with it such exhibits as the trial judge deems proper, except as provided in paragraph (C).
>
> \*    \*    \*
>
> (C) During deliberations, the jury shall not be permitted to have:
>
>> (1) a transcript of any trial testimony;
>>
>> (2) a copy of any written or otherwise recorded confession by the defendant;
>>
>> (3) a copy of the information or indictment; and
>>
>> (4) except as provided in paragraph (B), written jury instructions.

Pa.R.Crim.P. 646(A),(C).  If an item does not fall within any of the categories specifically prohibited by Rule 646(C), it falls within the discretion

of the trial court.  **See Commonwealth v. Bango**, 742 A.2d 1070, 1072

(Pa. 1999).  In **Bango**, our Supreme Court stated that:

> [w]e will deem a trial court to have abused its discretion only if
> we determine that the trial court's ruling exhibited manifest
> unreasonableness, partiality, prejudice, bias or such lack of
> support as to render it clearly erroneous.  We will not condemn a
> trial court's ruling as an abuse of discretion merely because we
> might have reached a different conclusion had the decision been
> ours in the first instance.

**Id.** (citations omitted).

Here, the jury asked to be reinstructed on almost all the definitions of

the charged crimes.  (**See** N.T. Trial, 6/25/14, at 35-36).  After a discussion

with both counsel, the Commonwealth suggested sending back the elements

of the crime, and defense counsel agreed.  (**See id.** at 36).  It is settled that

failure to raise a contemporaneous objection constitutes a waiver of the

claim.  **See Commonwealth v. Powell**, 956 A.2d 406, 419 (Pa. 2008),

*cert. denied*, 556 U.S. 1131 (2009).  Thus, Appellant waived his thirteenth

claim.

In his fourteenth issue, Appellant challenges the discretionary aspects

of sentence.[10]  Specifically, he maintains that the trial court deviated from

the sentencing guidelines without providing sufficient reasons for its

---

[10] We note that Appellant preserved his discretionary aspects of sentence
claim by filing a timely post-sentence motion for reconsideration of
sentence.  **See Commonwealth v. McAfee**, **infra** at 275.

sentence and imposed an excessive sentence without considering mitigating factors. (***See*** Appellant's Brief, at 46-50). We disagree.

The right to appeal the discretionary aspects of a sentence is not absolute. ***See Commonwealth v. McAfee***, 849 A.2d 270, 274 (Pa. Super. 2004), *appeal denied*, 860 A.2d 122 (Pa. 2004). When an appellant challenges the discretionary aspects of the sentence imposed, he must present "a substantial question as to the appropriateness of the sentence[.]" ***Commonwealth v. Anderson***, 830 A.2d 1013, 1017 (Pa. Super. 2003) (citations omitted). An appellant must, pursuant to Pennsylvania Rule of Appellate Procedure 2119(f), articulate "a colorable argument that the sentence violates a particular provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing scheme."[11] ***Commonwealth v. Kimbrough***, 872 A.2d 1244, 1263 (Pa. Super. 2005) (*en banc*), *appeal denied*, 887 A.2d 1240 (Pa. 2005) (citation omitted); ***see*** Pa.R.A.P. 2119(f). If an appellant's Rule 2119(f) statement meets these prerequisites, we have found that a substantial question exists. ***See Commonwealth v. Goggins***, 748 A.2d 721, 727 (Pa. Super. 2000) (*en banc*), *appeal denied*, 759 A.2d 920 (Pa. 2000). "Our inquiry must focus on the **reasons** for which the appeal is sought, in contrast to the **facts**

_____

[11] Here, Appellant has included a Rule 2119(f) statement in his brief. (***See*** Appellant's Brief, at 46-47).

underlying the appeal, which are necessary only to decide the appeal on the merits." *Id.* (emphases in original).

Here Appellant claims that the sentencing court failed to provide sufficient reasons for sentencing him outside the guidelines. (*See* Appellant's Brief, at 46). This claim raises a substantial question. *See* *Commonwealth v. Rodda*, 723 A.2d 212, 214 (Pa. Super. 1999) (*en banc*). Appellant also claims his sentence is excessive because the trial court did not consider mitigating factors. This Court has held that a claim of excessiveness in conjunction with a claim that the sentencing court did not consider mitigating factors presents a substantial question. *See* *Commonwealth v. Gonzalez*, 109 A.3d 711, 731 (Pa. Super. 2015), *appeal denied*, 125 A.3d 1198 (Pa. 2015) (citation omitted). We will therefore address the merits of this claim.

Our standard of review is settled.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Gonzalez*, *supra* at 731.

Appellant complains that the sentencing court sentenced him outside the guidelines. (*See* Appellant's Brief, at 46-50). We have stated that:

> When evaluating a challenge to the discretionary aspects of sentence . . . it is important to remember that the sentencing guidelines are advisory in nature. If the sentencing court deems it appropriate to sentence outside of the guidelines, it may do so as long as it offers reasons for this determination. [O]ur Supreme Court has indicated that if the sentencing court proffers reasons indicating that its decision to depart from the guidelines is *not un* reasonable, we must affirm a sentence that falls outside those guidelines.
>
> A sentencing court, therefore, in carrying out its duty to impose an individualized sentence, may depart from the guidelines when it properly identifies a particular factual basis and specific reasons which compelled [it] to deviate from the guideline range.

***Commonwealth v. Schull***, 148 A.3d 820, 836 (Pa. Super. 2016) (citations and quotation marks omitted, emphasis in original).

Here, the trial court had the benefit of a Pre-Sentence Investigation Report (PSI), a mental health report, and a lengthy sentencing memorandum from the Commonwealth. (***See*** N.T. Sentencing, 11/19/14, at 5). It acknowledged that Appellant had family support. (***See id.*** at 8). Victim M.O. testified at the sentencing hearing and the Commonwealth read a letter from Victim A.S. (***See id.*** at 12-16). The trial court specifically noted how difficult trial had been for the victims. (***See id.*** at 16). Appellant also spoke at sentencing; he did not take responsibility for his actions and instead complained how "heartbroken" and upset he was by the victims' accusations and blamed them for tearing the family apart. (***Id.*** at 17; ***see id.*** at 18). Both parties informed the trial court about the relevant

sentencing guidelines. (**See id.** at 6-9). In fact, the Commonwealth requested a significantly longer sentence than that imposed by the trial court. (**See id.** at 9). Immediately prior to imposing sentence, the trial court explained the basis for the sentence, noting how heart breaking the case was, the emotional difficulties suffered by the witnesses, and that the family was torn apart. (**See id.** at 19).

Therefore, Appellant's claim that the sentencing court abused its discretion in sentencing him outside the guidelines is meritless. **See Commonwealth v. Walls**, 926 A.2d 957, 966-68 (Pa. 2007) (so long as trial court imposed individualized sentence that was reasonable there was no abuse of discretion); **Commonwealth v. Davis**, 737 A.2d 792, 799 (Pa. Super. 1999) (affirming sentence outside guidelines where trial court was informed of PSI, heard testimony, and allowed defendant to speak before imposing sentence); **Commonwealth v. Devers**, 546 A.2d 12, 18 (Pa. Super. 1988) (finding statement of reasons sufficient where trial court had PSI and was presumed to have been aware of and weighed defendant's history, character, and mitigating factors).

Further, we reject Appellant's claim that the sentence was excessive because the trial court did not consider mitigating factors. Here, as discussed above, the trial court had the benefit of the PSI, a mental health evaluation, and a sentencing memorandum. While acknowledging the horrific nature of the case, the trial court still imposed a sentence well below

that requested by the Commonwealth. Clearly, the gist of Appellant's argument is not that the sentencing court did not consider the relevant sentencing factors, but rather that the court did not weigh them as much in his favor as he wished. Our review of the record does not show that the sentencing court abused its discretion or that it entered a manifestly unreasonable sentence. *See Commonwealth v. Zeigler*, 112 A.3d 656, 662 (Pa. Super. 2015) (holding sentence not manifestly unreasonable where sentencing court considered PSI, details of crime, and explained reasons for sentence); *see also Commonwealth v. Treadway*, 104 A.3d 597, 600 (Pa. Super. 2014) (holding that sentence of not less than one hundred nor more than two hundred years not manifestly excessive in light of defendant's conduct of child molestation). Appellant's claim lacks merit.

In his fifteenth and final issue, Appellant challenges the legality of his sentence. (*See* Appellant's Brief, at 43-46). Specifically, Appellant argues that the application of the mandatory minimum sentencing provisions set forth at 42 Pa.C.S.A. § 9718 violates the United States Supreme Court's decision in *Alleyne*, *supra*. (*See id.* at 43). For the reasons set forth below, we are constrained to agree.

"Issues relating to the legality of a sentence are questions of law, as are claims raising a court's interpretation of a statute. Our standard of review over such questions is *de novo* and our scope of review is plenary."

*Commonwealth v. Hawkins*, 45 A.3d 1123, 1130 (Pa. Super. 2012),

*appeal denied*, 53 A.3d 756 (Pa. 2012) (citation omitted).

The statute at issue in the present matter is 42 Pa.C.S.A. § 9718, which provides in pertinent part:

**(a) Mandatory sentence.—**

(1) A person convicted of the following offenses when the victim is less than 16 years of age shall be sentenced to a mandatory term of imprisonment as follows:

\* \* \*

18 Pa.C.S.[A] § 3123 (relating to involuntary deviate sexual intercourse)— not less than ten years.

\* \* \*

**(c) Proof at sentencing.—**The provisions of this section shall not be an element of the crime, and notice of the provisions of this section to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The court shall consider any evidence presented at trial and shall afford the Commonwealth and the defendant an opportunity to present any necessary additional evidence and shall determine, by a preponderance of the evidence, if this section is applicable.

42 Pa.C.S.A. § 9718(a)(1), (c).

In *Alleyne*, the United States Supreme Court held that "facts that increase mandatory minimum sentences must be submitted to the jury" and must be found beyond a reasonable doubt. *Alleyne*, *supra* at 2163. This Court explained the rationale of *Alleyne* as follows:

*Alleyne* is an extension of the Supreme Court's line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In *Alleyne*, the Court overruled *Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), in which the Court had reached the opposite conclusion, explaining that there is no constitutional distinction between judicial fact finding which raises the minimum sentence and that which raises the maximum sentence.

It is impossible to dissociate the floor of a sentencing range from the penalty affixed to the crime. Indeed, criminal statutes have long specified both the floor and ceiling of sentence ranges, which is evidence that both define the legally prescribed penalty. This historical practice allowed those who violated the law to know, *ex ante*, the contours of the penalty that the legislature affixed to the crime— and comports with the obvious truth that the floor of a mandatory range is as relevant to wrongdoers as the ceiling. A fact that increases a sentencing floor, thus, forms an essential ingredient of the offense.

Moreover, it is impossible to dispute that facts increasing the legally prescribed floor aggravate the punishment. Elevating the low-end of a sentencing range heightens the loss of liberty associated with the crime: the defendant's expected punishment has increased as a result of the narrowed range and the prosecution is empowered, by invoking the mandatory minimum, to require the judge to impose a higher punishment than he might wish. Why else would Congress link an increased mandatory minimum to a particular aggravating fact other than to heighten the consequences for that behavior? This reality demonstrates that the core crime and the fact triggering the mandatory minimum sentence together constitute a new, aggravated crime, each element of which must be submitted to the jury.

*Alleyne*, *supra* at 2160–61 (internal quotation marks and citations omitted).

*Commonwealth v. Miller*, 102 A.3d 988, 994-95 (Pa. Super. 2014).

In light of ***Alleyne***, this Court has declared unconstitutional those of Pennsylvania's mandatory minimum sentencing statutes that permit a trial court, rather than a jury, to make the critical factual findings for sentencing. ***See Commonwealth v. Cardell***, 105 A.3d 748, 751 (Pa. Super. 2014), *appeal denied*, 121 A.3d 494 (Pa. 2015) (holding mandatory minimum sentences pursuant to 18 Pa.C.S.A. § 7508, which concern weight of narcotics possessed by drug dealer, unconstitutional); ***Commonwealth v. Valentine***, 101 A.3d 801, 811-12 (Pa. Super. 2014) (holding 42 Pa.C.S.A. § 9712, which concerned mandatory minimum sentencing for certain crimes committed with firearm unconstitutional); ***Commonwealth v. Newman***, 99 A.3d 86, 90 (Pa. Super. 2014) (*en banc*), *appeal denied*, 121 A.3d 496 (Pa. 2015) (holding 42 Pa.C.S.A. § 9712.1, which imposes mandatory minimum sentencing for possessing firearm in close proximity to narcotics unconstitutional).

In ***Commonwealth v. Wolfe***, 106 A.3d 800 (Pa. Super. 2014), *appeal dismissed*, 145 A.3d 727 (Pa. 2016), this Court considered the constitutionality of Section 9718, the statute at issue in the case *sub judice*. In light of ***Alleyne***, ***Newman***, and ***Valentine***, we held that Section 9718 was facially unconstitutional because the elements of the "[p]roof at sentencing" provision required a trial judge, not a jury, make the factual findings by a preponderance of the evidence, and not beyond a reasonable doubt. ***Id.*** at 802; ***see id*** at 805.

Because subsection (a)(1), which the trial court applied in the instant matter, uses the same "[p]roof at sentencing" provision as in **Wolfe**, we are constrained to conclude that its application here was unconstitutional and the sentence illegal. **Id.** at 802.

Therefore, for the reasons discussed above, we vacate the November 19, 2014 judgment of sentence for Appellant's conviction for IDSI, 18 Pa.C.S.A. § 3123(a)(1). Despite the trial court's error in sentencing Appellant, we believe a remand for resentencing is not necessary. The court sentenced Appellant to a concurrent term of incarceration for unlawful contact with a minor, rape, and IDSI. Under these circumstances, it is clear that vacating a concurrent sentence would not upset the overall sentencing scheme, so no remand is necessary. **See Commonwealth v. Thur**, 906 A.2d 552, 569-70 (Pa. Super. 2006), appeal denied, 946 A.2d 687 (Pa. 2008) (if decision does not alter overall sentencing scheme there is no need for remand).

Accordingly, for the reasons discuss above we affirm the judgment of sentence in part and vacate the judgment of sentence for IDSI.

Judgment of sentence affirmed in part and vacated in part.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2017